


# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

**JAY TIEN CHIANG,**

　　　　　　　　　Debtor.

Case No.: 2:10-bk-15473SB

Chapter 15

**OPINION GRANTING RECOGNITION ON FOREIGN MAIN PROCEEDING IN CANADA**

Date:  June 22, 2010
Time:  2:00 p.m.
Ctrm:  1575
Floor: 15th

## I. INTRODUCTION

　　Jay Tien Chiang ("Chiang") is the debtor in a case pending in Toronto, Canada under the Canadian Bankruptcy and Insolvency Act. Mendlowitz & Associates, Inc. ("Mendlowitz"), the trustee in the Canadian case, brings this chapter 15[1] petition for recognition of the Canadian case as the debtor's foreign main proceeding. Creditor Korea Data Systems (USA) Inc. ("KDS"), Chiang's main creditor, supports recognition of the Canadian proceeding as a foreign main proceeding. However, Winner International Group Limited ("Winner") opposes recognition of the Canadian proceeding on the grounds of insufficient evidence.

　　Winner argues that Chiang has no center of main interests ("CoMI") in Canada or in any other country, and that he has no establishment[2] in Canada. Thus, Winner

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101-1532 (2008) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

[2] An establishment, for chapter 15 purposes, is a "place of operations where the debtor

1

argues, the Canadian proceeding cannot be recognized as either a main or a nonmain proceeding under chapter 15.

The court holds that, for every debtor, there is a country where the debtor's CoMI is located, and every debtor has one (but not more than one) CoMI. In this case, the debtor's residence is located in Canada, and thus he enjoys the presumption, which is unrebutted, that his CoMI is located in Canada.[3] Accordingly, the court recognizes the Canadian proceeding as the foreign main proceeding for the debtor.[4]

## II. RELEVANT FACTS

Debtor and his brother Julius Chiang created a computer business, Amazing Technologies Inc. ("Amazing Technologies"), a California corporation, in the 1980's. KDS claims that Amazing Technologies owes it some $10 million for computer monitors delivered in the early 1990's. Chiang and his brother settled that dispute in 1993 by personally guaranteeing the payment of $8.5 million to KDS.

After non-payment of the debt for a period of five years, KDS obtained a judgment from the Orange County Superior Court in 1998 awarding it $9.7 million against the Chiang brothers on their guarantees. The court further found that the Chiang brothers engaged in fraud and breached their fiduciary duties when they illegally transferred funds, securities, and real property to their family members.

KDS obtained a second California judgment of $5 million against the Chiangs in 1999. In 2008, the Orange County Superior Court granted a 10-year renewal of the judgments against the Chiang brothers, which by then totaled $17,896,867.

Chiang filed a voluntary bankruptcy petition in Canada on September 28, 1998.[5] The Canadian court subsequently found that, while the bankruptcy case was pending, Chiang fraudulently transferred, received, and hid assets while living a "lavish lifestyle." That court has held Chiang in contempt on six occasions for violating court orders. In addition, the Ontario Court of Appeal sent debtor to prison on the grounds that his continuous violations were "one of the worst cases of civil contempt to come before this court." *Mendlowitz & Associates Inc. v. Chiang*, [2009] O.A.C. at 9 (Can.).

In 2008, Mendlowitz discovered an E-Trade securities account, opened in Winner's name in 2006 in Hong Kong, with a $2.8 million balance.[6] On February 20, 2009, the Ontario Superior Court, suspecting that Winner held the account on behalf of Chiang,

---

carries out a non-transitory economic activity . . . ." § 1502(2).

[3] For the purposes of international bankruptcy law, it is necessary only to determine the country where a debtor's CoMI is located. Where it may be located within a country is not important for these purposes.

[4] Just as a debtor can have only one CoMI, the debtor can also have only one main proceeding, filed in the country where the CoMI is located.

[5] Debtor filed his Canadian case under the Bankruptcy and Insolvency Act, R.S.C., ch. B 3, § 49 (1985) (Can.). Canada has a second bankruptcy law, the Companies' Creditors Arrangement Act (the "CCAA"), a 1930's vintage statute (with periodic amendments) that is most often used for corporate arrangements. Companies' Creditors Arrangement Act., R.S.C., ch. C-36 (1985) (Can.) See Jacob Ziegel, *Corporate Groups and Cross-Border Insolvencies: A Canada-United States Perspective*, 7 Fordham J. Corp. & Fin. L. 367, 384-86; See also, e.g., *In re* Metcalfe & Mansfield Alternative Invs., 421 B.R. 685 (Bankr. S.D.N.Y. 2010).

[6] Debtor has a questionable history regarding the disclosure of assets, and doubts were revealed about debtor's ownership of the E-Trade account when E-Trade account's statements were found by a private investigator in garbage left at the curb for collection in front of debtor's Canada residence.

2

issued a *Mareva* order[7] freezing the E-trade account pending further determination of its ownership. The court modified the order later in 2009 to include expressly the E-Trade account here at issue. That order was reinstated by the Ontario Superior Court on March 13, 2009 and reaffirmed on April 27, 2010.

In the meantime, KDS filed an action against E-Trade, Winner, and Chiang in the Los Angeles County Superior Court on December 10, 2009 seeking a temporary restraining order ("TRO") as to the E-Trade account. The Superior Court issued the TRO[8] on April 15, 2009.[9]

On February 15, 2010, Mendlowitz filed this chapter 15 petition for recognition of the Canadian foreign proceeding pursuant to § 1515. Thereafter, Mendlowitz removed the Superior Court action to this court.

Upon recognition, Mendlowitz, joined by KDS, requests cooperation with the Canadian courts and extension of the interim relief pursuant to § 1521. Winner opposes the motion on the grounds that the Canadian case is not a "foreign main proceeding". E-Trade concedes that U.S. courts (but not Canadian courts) have personal jurisdiction over it.

This court previously granted interim relief pursuant to § 1519 freezing the E-Trade account, pending recognition of the Canadian bankruptcy case as a foreign proceeding.

### III. DISCUSSION

Chapter 15, enacted in 2005,[10] incorporates into U.S. law the Model Law on Cross-Border Insolvency ("Model Law")[11] promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"). The purpose of the Model Law is to coordinate international insolvency proceedings in more than one country for the purpose of promoting economic certainty and efficiency in cross-border insolvency cases.

To promote harmony among national insolvency laws, UNCITRAL recommends that each country adopt the Model Law as part of its domestic insolvency regime. While allowing for necessary adjustments, the Guide to Enactment advises that a country make only minor changes to the Model Law in the course of the adoption process. *See* SAMUEL L. BUFFORD, UNITED STATES INTERNATIONAL

---

[7] *See Mareva Compania Naviera SA v. International Bulkcarriers SA*, [1975] 2 Lloyd's Rep 509. *Mareva* injunctions are not available in the United States. In *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 327-29 (1999), the U.S. Supreme Court stated that *Mareva* relief was unknown to traditional equity practice:

> [I]t is instructive that the English Court of Chancery, from which the First Congress borrowed in conferring equitable powers on the federal courts, did not provide an injunctive remedy such as this until 1975. . . . [T]he adoption of *Mareva* injunctions was a dramatic departure from prior practice. . . . [F]ederal courts in this country have traditionally applied the principle that courts of equity will not, as a general matter, interfere with the debtor's disposition of his property at the instance of a non judgment creditor. We think it incompatible with our traditionally cautious approach to equitable powers, which leaves any substantial expansion of past practice to Congress, to decree the elimination of this significant protection for debtors.

[8] The TRO allowed Winner to sell stocks but prohibited the purchase of stocks or taking of money out of the E-Trade account in order to be protected in case the market crashed.

[9] The Los Angeles County Superior Court subsequently dismissed its case without prejudice on March 12, 2010, apparently to clear its docket after the removal of the case to this court.

[10] Chapter 15 of the Bankruptcy Code was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 (2005).

[11] Section 1501; *see* UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT, May 30, 1997 [hereinafter MODEL LAW & GUIDE].

3

INSOLVENCY LAW 3 (Oxford Univ. Press 2009); see also Guide at 12. Consequently, the Model Law is a valuable, persuasive instrument that U.S. courts use to interpret chapter 15. See § 1508.

In complement to the Model Law, the European Union Council has adopted its Regulation on Insolvency Proceedings ("EIR"), which can shed light on the meaning and interpretation of chapter 15 terms. See Council Regulation 1346/2000, 2000 O.J. (L160) 1-18 (as amended). In fact, the EIR was finalized one year before the Model Law, and they use many common concepts.

### A. Recognition of a Foreign Proceeding

Section 1517(a)[12] governs the recognition of a foreign insolvency proceeding. "Foreign proceeding" is defined in § 101(23), which states in relevant part:

> a "foreign proceeding" [is] a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency . . . in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court . . . .

Recognition of a foreign proceeding under § 1517 must meet three procedural and two substantive requirements. See in re Ran, 607 F.3d 1017, 1021-22 (5th Cir. 2010). The procedural requirements are imposed by § 1517(a)(3), which requires a petition for recognition to meet the requirements of § 1515.

Section 1515, in turn, imposes three pleading requirements. First, § 1515(a) requires that the foreign representative have filed a petition for recognition. Second, § 1515(b) requires the petitioner to establish that a foreign proceeding exists, and that the petitioner has been appointed as the foreign representative. The first two paragraphs of this subsection specify what constitutes sufficient evidence, and specify that the petitioner may satisfy this requirement by providing a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative," "a certificate from the foreign court affirming the existence of the foreign proceeding and the appointment of the foreign representative," or other evidence acceptable to the court that a foreign proceeding has been filed and the appointment of the movant as an authorized representative thereof. Third, § 1515(c) requires that the petition for recognition be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

Mendlowitz has satisfied all of these procedural requirements. Thus, § 1517(a)(3) has been satisfied. In addition, Mendlowitz has also met the requirements of § 1517(a)(2) because "the foreign representative applying for recognition is a person or body[.]"

Thus, the only substantive issue before the court is the requirement of § 1517(a)(1): whether the foreign proceeding for which recognition is sought is a foreign main or nonmain proceeding. If the foreign proceeding is neither a foreign main proceeding nor a foreign nonmain proceeding then it is simply ineligible for recognition under chapter 15. See Ran, 607 F.3d at 1022; In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 334 (S.D.N.Y.2008); see also, In re SPhinX, Ltd., 351 B.R. 103, 120 n.22 (Bankr.S.D.N.Y.2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007).

Recognition under § 1517 is not a "rubber stamp exercise." See, e.g., Ran, 607 F.3d at 1021; In re Basis Yield Alpha Fund

---

[12] Section 1515(a) states:

> (a Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.

*(Master)*, 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008). Even in the absence of an objection, a court must undertake its own jurisdictional analysis and grant or deny recognition under chapter 15 as the facts of each case warrant. *See Ran*, 607 F.3d at 1021; *Bear Stearns High-Grade*, 389 B.R. at 335. The ultimate burden of proof on the requirements for recognition is on the foreign representative. *See, e.g., Ran*, 607 F.3d at 1021.

### B. Recognition of the Foreign Main Proceeding

In this chapter 15 case, Mendlowitz seeks recognition of the Canadian proceeding as a foreign main proceeding. The recognition of a foreign proceeding as a main proceeding brings certain statutory benefits to the debtor. Section 1520(a) specifies that, upon recognition: (a) the automatic stay provisions of §§ 361 and 362 apply with respect to a debtor's U.S. property within the territorial jurisdiction of the United States; (b) §§ 363, 549 and 552 apply to a transfer of interest of the debtor in U.S. property; (c) the foreign representative may operate the debtor's business in the United States and may exercise the powers of a trustee pursuant to §§ 363 (use, sale or lease of property) and 552[13] (postpetition effect of security interests); and (d) § 552 applies to U.S. property of the debtor.

In this case, Mendlowitz wants to invoke subparagraph (a) of § 1520 to prevent Winner from dissipating assets of the E-Trade account until final determination of the ownership thereof by the Canadian court.

Such protection could perhaps be obtained under § 1521, which authorizes the court to grant "any appropriate relief" requested by the foreign representative after recognition of a foreign main proceeding.[14] The "any appropriate relief" language is extremely broad. *See id.* However, there would likely be a delay before such relief could be granted after the recognition order while, under § 1520, the application of the automatic stay arises immediately upon the recognition of a foreign main proceeding.

To qualify the foreign proceeding as a foreign main proceeding, Mendlowitz must show that debtor's CoMI is located in Canada. *See* § 1502(4), defining "foreign main proceeding" as a foreign proceeding pending in the country where the debtor has its CoMI.

CoMI is a term of art that is used only in the international insolvency or bankruptcy context. However, the term is not defined in chapter 15 or elsewhere in U.S. bankruptcy law. Indeed, it is also not defined in the Model Law (from which chapter 15 derives), or the EIR (from which the Model Law borrowed the term).

Some guidance is provided in the Recital 13 of the EIR, which states that, "[a] centre of main interests should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable to third parties." MIGUEL VIRGOS & ETIENNE SCHMIDT, REPORT ON THE CONVENTION ON INSOLVENCY PROCEEDINGS ¶ 75, at 48-50 (1996), *available at* http:// aei. pitt. edu/ 952/ 01/ insolvency_ report_ schmidt_ 1988. pdf (hereinafter Virgos/Schmidt Report).[15]

---

[13] It is not exactly clear how § 552 would apply in this subsection. Furthermore, the reference to § 552 is a typographical error: the legislative history indicates that it should state that § 542 applies (requiring the turnover of property to the estate). *See* H.R. REP. NO. 109-31, pt. 1, at 115 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 177.

[14] *See, e.g.*, SAMUEL L. BUFFORD, UNITED STATES INTERNATIONAL INSOLVENCY LAW 2008-2009, ¶ 1.8 (2009) (stating that, upon recognition of a foreign nonmain proceeding, the court may issue an order specifying that § 362, as well as many other provisions of the U.S. bankruptcy code, applies in a chapter 15 case after the recognition of a foreign nonmain proceeding.

[15] This definition originated from the unofficial but authoritative European explanatory Virgos/Schmidt Report, which stated that a "centre of main interests must be interpreted as the place where a debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *Id.* at 75. This report was originally designed to be the authorized guide to the EU

5

This language carries two important consequences. First, a debtor may not have more than one CoMI. Second, the location of the CoMI is an objective determination based on the viewpoint of third parties (usually creditors).

In addition, a debtor must have a CoMI and it must be in a specific country. The international insolvency legal regime is based on the assumption that every international entity has a home or a CoMI that is located in the country where the debtor's main proceeding may be commenced. That country has the greatest interest in the status of the debtor and in the outcome of the insolvency case. That country has also the greatest interest in the debtor because that country provides the legal regime that governs much of the debtor's commercial activities in most cases, including many matters unrelated to insolvency law.

If a debtor has no CoMI, as Winner contends in this case, there is no legal regime governing the debtor's commercial activities. A debtor's activities could be unregulated, and the entity could be operating outside the law. There would be no law providing for such a debtor's incorporation or status, no law giving sanction to its contracts and other commercial activities, no law governing its tort liabilities, no law providing for limited liability for its investors, and no law providing a home court for its insolvency problems. The international insolvency regime firmly rejects such a possibility.

Accordingly, in this case, Chiang must have a CoMI in a specific country. Given this mandate, Winner offers no alternative to Canada as the location of Chiang's CoMI and does not bring sufficient evidence to the contrary.

### C. § 1516 Presumption of Location of CoMI

Notwithstanding the lack of a definition of CoMI, § 1516 provides substantial help in determining the CoMI. For an individual, § 1516(c)[16] presumes that the CoMI is located in the country of the debtor's "habitual residence." Evidence as to the location of an individual's habitual residence is sufficient to trigger the presumption.

"Habitual residence" is a term that is also not defined in the bankruptcy code. We need not address this problem in this case, because it is not disputed that Chiang's habitual residence is in Richmond Hill, Ontario, Canada. Further, at the time of the filing of this chapter 15 case, Chiang shared his habitual residence with his wife Christina Chiang and two children and debtor's two children attended Upper Canada College, a school in Toronto. The Chiang family has strong personal ties to Canada. Chiang and his family have traveled and have always come back to Canada, and Chiang also has assets in Canada. Finally, Chiang has permanent legal status in Canada. He holds a Canadian passport that was temporarily confiscated by a Canadian court in order to preserve international assets.

Section 1516 shifts the burden to the opponent to rebut this presumption. However, chapter 15 does not indicate the type of evidence required for such a rebuttal. *Bear Stearns High-Grade*, 389 B.R. at 325.

In the case of an individual debtor, a party needs to use the appropriate factors and not the factors applicable exclusively to a corporate debtor. *See Ran*, 607 F.3d at 1024; *Bear Stearns High-Grade*, 389 B.R. at 325. In the present case, in order to rebut the presumption, Winner mistakenly applies factors pertinent to a corporate debtor encompassing the specific characteristics of a corporation such as the location of company personnel, assets, books, and records. Winner has not provided pertinent and sufficient evidence to overcome § 1516(c)'s presumption of the location of the debtor's habitual residence. In consequence, the court finds that Winner has failed to provide sufficient evidence that the debtor's CoMI is not located in Canada.

---

Convention. While the EU Convention was never adopted, however, it still retains interpretative vitality so long as its origins are properly understood.

[16] Section 1515(c) provides in relevant part: "In the absence of evidence to the contrary, the . . . habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

In the present case, this court finds that the Canadian proceeding is properly recognized as debtor's foreign main proceeding. Debtor's CoMI is in Canada, where debtor maintains his habitual residence.

### D. Recognition of the Canadian Bankruptcy Case as the Foreign Main Proceeding

Given the court's determination that the debtor's CoMI is located in Canada, where the foreign proceeding is pending for which recognition is sought, the court finds that the foreign proceeding is a foreign main proceeding under § 1520. It follows that a number of provisions of the U.S. bankruptcy code apply automatically in this chapter 15 case. Most relevant in this case is that that automatic stay provided in § 362 applies to the debtor's property in the United States, including the assets in the E-Trade account.

### IV. CONCLUSION

This court holds that the Canadian proceeding is the debtor's foreign main proceeding pursuant to § 1517(a). Debtor's habitual residence, which presumptively establishes an individual debtor's CoMI, is located in Canada, and insufficient evidence to the contrary has been presented to rebut that presumption.

For the foregoing reasons, this court orders recognition of the Canadian proceeding as debtor's foreign main proceeding pursuant to § 1517. Further, the court extends the order for interim relief granted on March 23, 2010, staying the E-Trade account subject to further order of this court. *See* § 1521.

The eventual determination of the rightful owner of the E-Trade account is left to Canadian courts to be decided in due course.

Dated: August 31, 2010

_____
Hon. Samuel L. Bufford
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **OPINION GRANTING RECOGNITION TO FOREIGN MAIN PROCEEDING IN CANADA** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of August 31, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Richard M. Moneymaker, Esq.   rmm@moneymakerlaw.com
United States Trustee              ustpregion16.la.ecf@usdoj.gov
Dare Law, Esq.                     dare.law@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Jay Tien Chiang
10 Cortina Court
ON L4B 3G8
Richmond Hill
Canada

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):

8